| ¡.JAMES L. CANNELLA, Judge.
In a contract dispute, the Plaintiff, Orion Refining Corporation (Orion), appeals from a partial summary judgment in favor of the Defendant, Shaw Constructors, Inc. (Shaw). We reverse and remand.
In 1998, Orion contracted with Shaw to provide administrative and construction services as part of a $900,000,000 capital improvement project for an oil refinery owned by Orion in Norco, Louisiana. Subsequently, a dispute arose over the Construction Services Contract (CSC). In July of 2000, Orion filed suit alleging that Shaw breached the contract. Among other allegations of breach, Orion asserts that Shaw overbilled it by including a hidden profit in the base used to calculate the stipulated percentages for non-direct labor costs. Pursuant to the contract terms, Orion requested an audit. The petition claims that Shaw refused to provide Orion with complete access to the records.
On October 17, 2000, Shaw filed a suit against Orion for breach of two fabrication contracts. The cases were consolidated in January of 2001.
As discovery progressed, disputes arose regarding the requests for production of *163 documents served on each party by the other. In September of 2001, |3a hearing on a Motion to Compel discovery that had been filed by Orion was held. After the hearing, the trial judge rendered a judgment that included an order for Orion to file an amended petition by October of 2001 to state its claims with more specificity and for Shaw to comply with Orion’s requests for documents.
On October 19, 2001, Shaw filed a Motion for Partial Summary Judgment, contending that Orion is not entitled to discovery of Shaw’s “non-direct” labor costs calculated from the fixed percentages that were stipulated in the contract and which were applied to the direct labor costs. Shaw contended that, based on the provisions of the contract, Orion is only entitled to an audit of direct costs incurred after the date of the contract, October 1, 1998. Shaw also filed a motion for the trial judge to withdraw his order permitting Orion to file the amended petition.
A hearing on both matters was held on March 25, 2002. On May 15, 2002, the trial judge granted the partial summary judgment and denied Orion leave to file the amended petition, reversing his prior order. The trial judge concluded that the “non-direct costs associated with the CSC as per the fee calculation formulated under the CSC cannot form the basis of Orion’s alleged breach of warranty claim, but that Orion can audit the direct costs as set forth in the contract.” On June 21, 2002, the trial judge certified the partial summary judgment as appealable.[1]
The issue on appeal is whether Orion is entitled to discover anything related to the non-direct costs for labor that was applied to the direct labor costs. Orion claims that it needs to audit those costs in order to determine whether Shaw charged Orion a hidden profit for non-direct costs, in violation of Attachment III, Paragraph 1(a). Orion asserts that it is entitled to audit the costs pursuant to Attachment I, Paragraph 13(b) of the contract because they are reimbursable items. [ 4Orion supports this argument by referring to the Shaw Prospectus and an affidavit. Alternatively, it contends that the trial judge erred in denying the motion for new trial on the partial summary judgment because a letter produced by Shaw after the judgment conflicts with the Affidavit of Richard Gill, Shaw’s senior vice-president in charge of Construction and International Operations. Orion notes that this supports its position that the motion for summary judgment was premature since discovery has not been completed.
THE CONTRACT PROVISIONS
The CSC is a cost-plus contract comprised of the contract “Form of Agreement” and three attachments. Attachment I sets out the general conditions, Attachment II provides the special conditions, and Attachment III relates to “Quantities, Pricing and Data.” On the first page of the contract, number 2 states:
2. COMPENSATION: As consideration for the CONTRACTOR’S services hereunder the OWNER shall pay CONTRACTOR on a reimbursable basis compensation in accordance with the rates set forth in Attachment III and *164 with the applicable payment provisions of this contract ...
The contractor’s fee is provided in the special conditions attachment, number 12. Under this provision, Orion agrees to pay Shaw $5,000,000 and “any reimbursable amounts provided for under this Agreement.” In addition, the contract provides that, if the “reimbursable cost for the Work and the fee set forth in the immediately preceding paragraph” exceed $132,-000,00 Shaw would receive further compensation.
Number 4 of Attachment I provides the order of precedence of the contract documents in resolving conflicts, discrepancies, errors or omissions. This order applies to “All Contract Documents.” The order of precedence is the Contract Form of Agreement, Attachment II-Speeial Conditions, Attachment I-General Conditions, and Attachment Ill-Quantities, Pricing and Data.
The audit provision at issue here is in Attachment I, number 13(b). It states:
ls(b) CONTRACTOR shall permit ... authorized representatives of OWNER to review CONTRACTOR’S accounting and cost control systems and inspect books, records, accounts and other documents ... above as necessary to audit and verify the completeness and accuracy of REIMBURSEABLE COSTS contained in invoices submitted by CONTRACTOR, or for any other reasonable purpose. [Emphasis added]
The warranty provision in dispute is in Attachment III. The pertinent parts state:
The terms and conditions set forth herein specify the basis for compensating Contractor for labor services, equipment changes, and other activities which the Contractor may provide to Owner in the performance of this Contract. It is understood and agreed that the Contractor may not charge Owner for any costs not specifically provided for hereinafter without Owner’s prior approval:
1. Labor Payroll Cost
a. For services rendered, owner shall reimburse contractor all direct salaries and wages in accordance with the non-exempt base wage rates, and per the exempt personnel classifications and base wages schedule. In addition, owner shall pay to contractor a fee for benefits, indirect costs and overhead, etc. calculated at 41.763% for non-exempt employees, and 50.763% for exempt employees, multiplied by the wages paid. CONTRACTOR represents and warrants that the basis for the fee percentages above does not include a profit component. [Emphasis added]
We find that the audit is authorized for two reasons. First, paragraph 1, cited above, seems to separate reimbursable costs from set fees. However, the first page of the Contract Form, Number 2 does not differentiate a “fee” from “costs.” When there is a conflict, the contract form takes precedence. See, Attachment I, Number 4. Under those provisions, we find that the non-direct costs are subject to audit. Second, Attachment I, Number 13(b), does not limit the audit to reimbursable costs. Orion is entitled to an audit for any reasonable purpose and the discovery of information necessary to the pursuit of a legal claim is a reasonable purpose.
Shaw argues that the discovery of the non-direct costs should not be allowed because it is not relevant. Shaw asserts that the parties stipulated to the percentages and Orion cannot object to the allocation of those percentages. It | fiargues that even if an audit showed a profit was made from those percentages, Orion cannot complain because it did not agree not to profit from the allocation of the non-direct costs. Shaw agrees that Orion can audit the basis *165 for the percentages because it did agree to calculate that basis without a profit component.
La.C.C.P. art. 1422 states that “Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.”
We agree that the warranty only relates to the basis used to calculate the percentages. Information about those non-direct labor costs and the allocation of those fees may be ultimately inadmissible at trial for that reason, although we make no determination either way at this point. Here, the narrow issue is whether the information is discoverable. On the showing made, we cannot say that it is not relevant. Nor can we find that it will not lead to admissible evidence of Orion’s claims. Thus, Orion is entitled to discovery (audit) of the information.[2] For these reasons, we reverse the ruling which grants the partial summary judgment. We also grant the writ for the same reasons. See: Orion Refining Corporation v. Shaw Constructors, Inc. c/w The Shaw Group, et al v. Orion Refining Corporation, Writ No. 02-C-637.
Accordingly, the partial summary judgment is hereby reversed. The case is remanded for further proceedings. Costs of the appeal are to be paid by Shaw.
REVERSED AND REMANDED.

. We are not bound by the certification of a non-appealable judgment granted under La. C.C.P. art.1915 (see: Berman v. De Chazal, 98-81 (La.App. 5th Cir.5/27/98), 717 So.2d 658). We accepted the certification in this case, although we are reluctant to rule on contractual issues piecemeal, because the consolidated cases involve complicated contracts, and a resolution of this issue is judicially economical. We note that Orion filed both an appeal and a writ application (02-C-637). The writ was stayed and its resolution was referred to the merits of the appeal.

. We note that the judgment fails to recognize Orion's right to audit the basis used to calculate the percentages. Had we agreed with the decision relative to the non-direct costs issue, we would have amended the judgment to reflect that right.