STATE OF LOUISIANA

COURT OF APPEAL

*JEW*
*MRT by JEW*

FIRST CIRCUIT

* * * * * * *

2021 CA 0145

KIRK D. PARKER

VERSUS

RECREATION & PARK COMMISSION FOR THE PARISH OF
EAST BATON ROUGE, AND PARISH OF EAST BATON ROUGE

JUDGMENT RENDERED:  **NOV 0 1 2021**

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number C665849 • Sec. 27

The Honorable Trudy M. White, Presiding Judge

* * * * * * *

| | |
|---|---|
| Joseph Arthur Smith, III<br>Joseph Arthur Smith, IV<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLANT<br>PLAINTIFF—Kirk D. Parker |
| James R. Raines<br>Kelsey A. Clark<br>Katherine M. Cook<br>Christopher A. Mason<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—Recreation & Park<br>Commission for the Parish of East<br>Baton Rouge ("BREC") |
| Jeffrey G. Rice<br>*Special Assistant Parish Attorney*<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—Parish of East<br>Baton Rouge |

* * * * * * *

*pMc by JEW* BEFORE: MCCLENDON, WELCH, AND THERIOT, JJ.

*McClendon J. concurs in result reached by the majority*

**WELCH, J.**

The plaintiff, Kirk D. Parker, appeals the trial court's judgment granting the Recreation and Park Commission for the Parish of East Baton Rouge's ("BREC's"), motion for summary judgment, which dismissed Parker's claims against BREC, with prejudice. We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 15, 2017, Parker was walking home to his residence on East Grant Street via BREC[1] Corporate Parkway. BREC Corporate Parkway is a narrow strip of grassy land running in a north-south direction between homes in a residential neighborhood in Baton Rouge, just north of Louisiana State University. BREC Corporate Parkway is east of and runs parallel to Highland Road, beginning at East Harding Street and continuing five blocks south to its intersection with East Grant Street. This five block stretch of land is approximately as wide as the residential lots that border it on either side. A concrete sidewalk "trail" runs through BREC Corporate Parkway in a north-south direction for the entirety of the five block stretch of land.

At the time of the incident, Parker had deviated six feet from the sidewalk onto the grassy area adjacent to the sidewalk to avoid a possum that was on the sidewalk. While walking on the grassy area, Parker's right foot stepped through grass into an existing, obscured hole that was approximately thirty-two inches deep. Parker alleged that when he stepped into the hole with his right foot, his entire right leg fell into the hole, which caused him to injure his left leg and knee.

Parker filed suit against BREC and the Parish of East Baton Rouge ("EBR Parish"), alleging that one or both political subdivisions owned, operated, and maintained the grassy area along BREC Corporate Parkway, including the hole

---

[1] BREC is a political subdivision of the State of Louisiana, authorized and empowered by La. R.S. 33:4570, *et seq.*, to own and administer parks and recreational properties within EBR Parish. See **Ortega v. Recreation & Parks Comm'n for Par. of E. Baton Rouge**, 2017-1502 (La. App. 1st Cir. 7/18/18), 255 So.3d 6, 10 n.1.

2

which caused him injury. Parker alleged that the hole was caused by the removal of playground equipment, or alternatively, caused by an underground concrete drainage pipe.

Thereafter, BREC filed a motion for summary judgment, arguing that the hole at issue formed as a result of a partially-collapsed underground concrete drainage pipe. BREC argued that Parker would be unable to prove two essential elements of his claim: (1) that BREC owned or had custody or control of the underground concrete drainage pipe; and (2) that BREC had actual or constructive notice of the allegedly defective condition, the underground concrete drainage pipe. Parker opposed BREC's motion for summary judgment, arguing that the hole he stepped into—located on BREC owned or controlled property—was the allegedly defective condition that caused his injuries, not an underground concrete drainage pipe. Following a hearing, the trial court granted BREC's motion for summary judgment and signed a judgment in accordance with its ruling on August 19, 2020.

Parker filed a motion for new trial, which after a hearing, the trial court denied in a judgment signed on October 14, 2020. Parker now appeals.[2]

---

[2] Parker's motion for appeal indicated that he desired to devolutively appeal the court's August 19, 2020 *and* October 14, 2020 judgments. Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc.**, 2011-0520 (La. App. 1st Cir. 11/9/11), 79 So.3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So.3d 698. Our appellate jurisdiction extends to "final judgments," which are those that determine the merits in whole or in part. La. C.C.P. arts. 1841 and 2083. See **Van ex rel. White v. Davis**, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So.2d 478, 483. The established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment. **McKee v. Wal-Mart Stores, Inc.**, 2006-1672 (La. App. 1st Cir. 6/8/07), 964 So.2d 1008, 1013, writ denied, 2007-1655 (La. 10/26/07), 966 So.2d 583. However, the Louisiana Supreme Court has directed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits, when it is clear from the appellant's brief that he intended to appeal the merits of the case. **Carpenter v. Hannan**, 2001-0467 (La. App. 1st Cir. 3/28/02), 818 So.2d 226, 228-29, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153.

It is obvious from Parker's appellate brief that he intended to appeal the judgment on the merits—the August 19, 2020 judgment granting BREC's motion for summary judgment. The granting of a motion for summary judgment is a final, appealable judgment. La. C.C.P. art. 1915(A)(3). Thus, we will treat Parker's appeal accordingly: as an appeal of the trial court's August 19, 2020 judgment.

# LAW

## *Motion for Summary Judgment*

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). In reviewing a trial court's ruling on a motion for summary judgment, appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553, 2017-1554 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194.

The Code of Civil Procedure places the initial burden of proof on the party filing the motion for summary judgment, here BREC. See La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue raised in the motion for summary judgment, as in the instant matter, the mover is not required to negate all of the essential elements of the adverse party's claim, action, or defense. See La. C.C.P. art. 966(D)(1). See also **Babin v. Winn-Dixie Louisiana. Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 39. However, the mover must demonstrate the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). See also La. C.C.P. art. 966, Comments—2015, Comment (j).

Once the motion for summary judgment has been made and properly supported, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the

4

existence of a genuine issue of material fact, La. C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. See **Babin**, 764 So. 2d at 40; **Jenkins v. Hernandez**, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078.[3] Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC**, 255 So.3d at 22.

### *Liability for Public Bodies/Political Subdivisions*

In his petition for damages, Parker asserted tort claims against BREC, which are rooted in the general principles of negligence found in La. C.C. arts. 2315, 2316, 2317, 2317.1 (liability for damage caused by a defective thing), and 2320 (liability for acts of servants, students, or apprentices). Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles as set forth in the Civil Code. See **Brewer v. J.B. Hunt Transport, Inc.**, 2009-1408 (La. 3/16/10), 35 So.3d 230, 240. In order for liability to attach under the duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to

---

[3] Simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. See **Franklin Credit Mgmt. Corp. v. Gray**, 2007-1433 (La. App. 4th Cir. 1/14/09), 2 So.3d 598, 603, writ denied, 2009-0476 (La. 4/17/09), 6 So.3d 795. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. **Kasem v. State Farm Fire & Cas. Co.**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So.3d 6, 13.

conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiff's injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection, or legal cause element); and (5) actual damages (damages element). See **Bellanger v. Webre**, 2010-0720 (La. App. 1st Cir. 5/6/11), 65 So.3d 201, 207, writ denied, 2011-1171 (La. 9/16/11), 69 So.3d 1149; **Lazard v. Foti**, 2002-2888 (La. 10/21/03), 859 So.2d 656, 659. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Bellanger**, 65 So.3d at 207. In an action to recover damages for injuries allegedly caused by another's negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. **Hanks v. Entergy Corp.**, 2006-477 (La. 12/18/06), 944 So.2d 564, 578.

A public entity's liability for a defective thing within its custody or care is analyzed under La. R.S. 9:2800. **Broussard v. State ex rel. Office of State Bldgs.**, 2012-1238 (La. 4/5/13), 113 So.3d 175, 181. Louisiana Revised Statutes 9:2800 states, in pertinent part:

> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

As stated above, La. R.S. 9:2800(D) defines "constructive notice" as "the existence of facts which infer actual knowledge." Constructive knowledge may be shown by facts demonstrating that the defect or condition has existed for such a

6

period of time that it would have been discovered and repaired had the public body exercised reasonable care. **Greene v. Succession of Alvarado**, 2015-1960, 2015-1961 (La. App. 1st Cir. 12/27/16), 210 So.3d 321, 334. A public entity has constructive knowledge if it "knew or should have known" of the defective condition. **Id.** While BREC cannot be imputed with knowledge of every defect in its parks, neither can BREC escape liability by negligently failing to discover that which is easily discoverable. See **Id.**

Thus, in order to prove the liability of BREC based on an alleged defective condition of BREC Corporate Parkway, Parker must prove: (1) that BREC owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) BREC had actual or constructive knowledge of the defect or risk of harm and failed to take corrective action within a reasonable time; and (4) the defect was the cause-in-fact of Parker's injury. See La. R.S. 9:2800; **Tilley v. City of Walker**, 2018-1587 (La. App. 1st Cir. 12/30/19), 294 So.3d 496, 500.

## DISCUSSION

### *The Parties' Arguments*

Parker has alleged injury from stepping into a hole in the grassy area of BREC Corporate Parkway, which BREC argued formed as a result of a collapsed underground concrete drainage pipe. BREC asserted that the collapsed underground concrete drainage pipe was the allegedly defective condition that caused injury to Parker. BREC specifically sought summary judgment on the basis that there was an absence of factual support for the custodial element and the notice element of Parker's negligence action. In support of its motion, BREC attached: (1) Parker's petition for damages; (2) portions of Parker's deposition, including his initial medical report and various photographs of the hole and sidewalk at issue; (3) portions of the

7

deposition of Shane Nicholas, the Drainage Maintenance Manager for EBR Parish; and (4) the affidavit of RaHarold Lawson, a Director of Park Operations for BREC.

In support of its contention that it did not have custody or control of the defective drainage pipe at issue, BREC submitted the deposition of Shane Nicholas, the Drainage Maintenance Manager for EBR Parish, through the Department of Public Works ("DPW"). Mr. Nicholas testified that EBR Parish had complete control, custody, and responsibility for the maintenance, repairs, and improvements to the underground concrete drainage pipe at issue. BREC also submitted the affidavit of RaHarold Lawson, BREC's Director of Park Operations, who stated that the underground drainage pipe was owned and maintained by EBR Parish and that BREC does not have authorization to perform maintenance on drainage pipes.

BREC further argued that it did not have notice of the defective drainage pipe. Mr. Nicholas testified that the underground concrete drainage pipe had been installed by EBR Parish in 1971 and that he was aware of only one prior collapse of this particular pipe that had occurred at a different location on a neighboring block a few years before Parker's accident. Mr. Lawson stated in his affidavit that EBR Parish did not give notice to BREC of any previous issues with the underground concrete drainage pipe. Mr. Lawson further stated that BREC had no knowledge that concrete drainage pipes even ran along the sidewalk of the Corporate Parkway. After Parker's accident, Mr. Lawson stated that BREC conducted an investigation of the BREC Corporate Parkway and found other holes that appeared to be forming above EBR Parish's underground concrete pipe drainage system. BREC crews filled the holes with dirt and sent written notice to EBR Parish that holes were forming above the underground concrete drainage pipes.

In opposition to BREC's motion for summary judgment, Parker argued that the hole he stepped into was the allegedly defective condition that caused his injuries, not the collapsed underground concrete drainage pipe. In support of his opposition to

8

BREC's motion, Parker submitted: (1) his petition for damages; (2) BREC's responses to his interrogatories and requests for production of documents; and (3) the affidavit of Justin Smith, a Director of Park Operations for BREC.

In his petition for damages, Parker alleged that the hole located in the grassy area next to BREC Corporate Parkway that he stepped into was the "dangerous condition" that caused his injuries. Parker contended that the hole was located on property owned and maintained by BREC. Parker further argued that BREC had constructive notice of the existence of the hole. In support of his contention, Parker pointed to BREC's responses to his interrogatories and requests for production of documents, wherein BREC admitted that "[g]eneral inspection of BREC parks also occurs on a monthly basis," in addition to regularly contracted lawn maintenance. In his deposition, Parker testified that grass had grown over and inside the hole. Parker also pointed to the photographs BREC submitted in support of its motion, which showed that trash had accumulated in the bottom of the hole. Parker argued that the overgrown grass and accumulated trash indicated that a significant enough amount of time had passed during which BREC should have reasonably discovered the existence of the hole in order to remedy it.

*Analysis*

While it is possible that there may be more than one cause that occurred to bring about Parker's accident[4] (*i.e.*, more than one defective condition), Parker specifically alleged in his petition for damages that the **hole** he stepped into, located

---

[4] See **LeJeune v. Allstate Ins. Co.**, 365 So.2d 471, 477 (La. 1978) (quoting **Prosser on Torts**, Section 41 at p. 239 (4th ed. 1971): "If two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some…test[, other than the "substantial factor" test, which is similar to the "but-for" test] is needed… . In such cases it is quite clear that each cause has in fact played so important a part in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all.").

under the surface of the grassy area of BREC Corporate Parkway, is the "dangerous condition" that caused his injuries.[5]

### *Custody or Control (Garde)*

The evidence shows that a hole existed under the surface of the grassy area of BREC Corporate Parkway, located approximately six feet away from the sidewalk. The hole was approximately thirty-two to thirty-six inches (three feet) deep and approximately three feet wide. Parker also testified that a partially-collapsed, underground concrete drainage pipe was located below the surface of the grassy area. The photographs submitted by BREC in support of its motion for summary judgment—specifically Exhibits 5, 6, and 7—additionally show that an underground concrete drainage pipe forms the sides and bottom of the hole that Parker stepped into.

The undisputed evidence shows that a hole existed under the surface of the grassy area of BREC Corporate Parkway. The evidence further shows that the hole was caused by a partially-collapsed, deteriorating, underground concrete drainage pipe. It is also undisputed that BREC has custody and control of BREC Corporate Parkway, the surface under which the hole was located. Thus, Parker has pointed out a genuine issue of material fact regarding BREC's custody or control of the hole. Accordingly, we find that the trial court erred in finding that BREC did not have custody or control of the hole into which Parker stepped and allegedly suffered injury.

### *Actual or Constructive Notice*

The evidence shows that there were no prior incidents involving holes at BREC Corporate Parkway. The affidavits of Mr. Lawson and Mr. Smith, both Directors of Park Operations for BREC, demonstrate that BREC had no actual notice

---

[5] We make no finding as to whether more than one defective condition caused injury to Parker; to do so would involve the weighing of evidence, which is improper on summary judgment. See **Janney**, 40 So.3d at 289.

of the hole at issue nor any other holes. Parker's lawsuit was BREC's first notice of any holes at or near BREC Corporate Parkway. These facts shifted the burden of proof on the motion for summary judgment to Parker to produce factual support sufficient to establish the existence of a genuine issue of material fact as to whether BREC had actual or constructive notice of the hole. See La. C.C.P. art. 966(D)(1).

Parker argues that BREC had constructive notice of the hole. Since BREC's interrogatory responses indicated that BREC examined the property monthly and performed regular lawn maintenance, Parker contends that BREC should have been aware of the hole. However, Parker's own uncontroverted testimony was that grass was growing over the hole, which obscured the hole from view. Parker further testified that when he stepped into the hole, his foot went through grass covering the hole, and that because the hole was covered in grass, he could not see the hole prior to stepping into it. Therefore, a visual inspection of the property by BREC would not have revealed the presence of the hole. Furthermore, Parker's evidence submitted in opposition to BREC's motion for summary judgment does not point out how BREC conducted its monthly inspections or whether the scope of such inspections would or should have revealed the obscured hole. There is also no indication that persons performing lawn maintenance at BREC Corporate Parkway, which was performed by a contractor, found or reported the existence of the hole. Parker's allegation that BREC had constructive notice is speculative at best; it takes more than the existence of a mere factual possibility to defeat summary judgment. See **Jefferson v. Nichols State Univ.**, 2019-1137 (La. App. 1st Cir. 5/11/20), 311 So.3d 1083, 1086-87, writ denied, 2020-00779 (La. 11/4/20), 303 So.3d 623. Therefore, we find no error in the trial court's finding that BREC did not have actual or constructive notice of the existence of the hole into which Parker stepped and allegedly suffered injury.

## *Conclusion*

After conducting a *de novo* review of the evidence, we find that BREC met its burden of proof on its motion for summary judgment by demonstrating an absence of factual support for one essential element of Parker's claim, actual or constructive notice. Parker did not produce any factual support that established the existence of a genuine issue of material fact as to the notice element. See La. C.C.P. art. 966(D)(1). Therefore, the motion was properly granted.

## MOTION TO STRIKE

BREC filed a motion to strike Parker's reply brief filed with this Court, or alternatively, strike sections A-F of Parker's reply brief. BREC avers that the arguments presented in Parker's reply brief consist of entirely new issues and arguments that were not presented to the trial court and that are not mere rebuttal points to BREC's appellee brief. BREC alleges Parker's new arguments include: (1) the assertion that the hole in which he fell is not a "sinkhole"; (2) the argument that there is no evidence that the "sinkhole" was a defective condition; (3) the contention that the "surface area," *i.e.*, the grass, constitutes a defective condition; (4) the assertion that BREC is strictly liable; (5) the argument regarding the adequacy of the inspections; and (6) the contention that a genuine issue of material fact exists as to whether grass was growing on the bottom of the hole. In response, Parker maintains that all of the arguments made in his reply brief are "to rebut arguments either expressly or impliedly made by BREC in its [a]ppellee [b]rief."

The Uniform Rules, Courts of Appeal, Rule 1–3 provides:

> The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.

12

Furthermore, Uniform Rules, Courts of Appeal, Rule 2–12.6 provides that "[t]he appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in the appellee's brief. No further briefs may be filed except by leave of court."

While most of the arguments BREC seeks to strike from Parker's reply brief appear to be related to the issue of constructive notice, even if just tangentially, some of the statements potentially extend beyond what was specifically set forth in the original briefs submitted to this Court and in Parker's opposition to the motion for summary judgment that was filed in the trial court. Therefore, we grant BREC's motion to strike in part and strike sections A-F of Parker's reply brief filed with this Court.

## DECREE

We grant in part BREC's motion to strike the appellant's reply brief that was filed in this Court. We strike sections A-F of the plaintiff/appellant's, Kirk D. Parker, reply brief filed with this Court.

We affirm the trial court's August 19, 2020 judgment, which granted summary judgment in favor of the defendant/appellee, Recreation and Park Commission for the Parish of East Baton Rouge ("BREC"), and dismissed all of the plaintiff/appellant's, Kirk D. Parker, claims against BREC with prejudice.

We assess all costs of this appeal against the plaintiff/appellant, Kirk D. Parker.

**MOTION TO STRIKE APPELLANT'S REPLY BRIEF GRANTED IN PART; JUDGMENT AFFIRMED.**